IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

FILED
JAN 23 2002

GLENN CALFEE, )
DARLENE CALFEE, )
 )
    Plaintiffs, )
 )
v. ) Case No.: CV-01-PT-1247-E
 )
HARTFORD ACCIDENT & )
INDEMNITY COMPANY, et al., )
 )
    Defendants. )

ENTERED
JAN 23 2002

## MEMORANDUM OPINION

This cause comes to be heard on defendant Hartford Accident & Indemnity Company's ("Hartford") Motion for Summary Judgment filed on November 26, 2001.

### FACTS[1]

Plaintiffs Glenn and Darlene Calfee ("plaintiffs") are citizens of Talledega County, Alabama. Hartford is a corporation organized and existing under the laws of the State of Connecticut and has its principal place of business in Hartford, Connecticut.

Mr. Calfee is an employee of the Xerox Corporation. He began his employment with Xerox in 1973. However, he suffers from chronic depression and panic disorder and, therefore, has been on disability since 1988.

Mr. Calfee has been breeding and selling cairn terriers since 1992. After Mr. Calfee began breeding the terriers, his psychiatrist, Dr. Ray Thweatt, noticed a significant impact on Mr. Calfee's depression. Dr. Thweatt encouraged Mr. Calfee to continue to raise the terriers in order for him to feel useful and productive.

---

[1] Stated favorably to the plaintiffs for the purposes of this motion only.

Mr. Calfee did continue to breed and sell the cairn terriers. He registers the terriers with the American Kennel Club in order that potential buyers will be assured of their pedigree. He also advertises his cairn terriers in the Birmingham News and on the internet at www.purebreeders.com. On average, Mr. Calfee's terriers produce two to three litters per year. He sells the terrier puppies for approximately $400 each. Mr. Calfee keeps a contract of sale for each buyer. Although Mr. Calfee sells the terriers for a fee, he has never made any profit raising the terriers. He does not claim any business deductions on his taxes for the expense of dog food, vet bills, and registration fees.

In the summer of 2000, the plaintiffs moved into a dwelling located in Sylacauga, Alabama. The plaintiffs insured their new dwelling under a Hartford Premier Homeowner's Insurance Policy. Hartford issued the plaintiffs a homeowner's insurance policy designated as policy number 48 RB 252120. The policy covered the plaintiffs' dwelling and other structures on the resident premises. Specifically, the homeowner's policy provided in pertinent part:

### SECTION I- PROPERTY COVERAGES

**COVERAGE B - Other Structures**

We cover other structures on the resident premises set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection. This coverage does not apply to land, including land on which the other structures are located.

We do not cover structures:

1.   Used in whole or in part for **business**.

The policy defines "Business" as follows: "**Business** includes trade, profession or occupation."

On his property, Mr. Calfee constructed a structure ("structure") that was a rectangle building 20' by 32'. Mr. Calfee used this structure to shelter and breed his terriers and for

2

storage.[2] As for sheltering the terriers, the structure had three dog pens located inside. It also had doors that were specifically designed to allow the terriers to go in and out of the structure. As for storage purposes, Mr. Calfee stored his garden tools, lawn tractors, wheel barrows, farming hand tools, contracts of sale, AKC papers, and other terrier records in the structure.

On or about February 4, 2001, a fire destroyed the structure on the plaintiffs' property. On February 5, 2001, the plaintiffs made a claim with Hartford under their homeowner's policy. After Hartford's initial investigation, it became aware that the plaintiffs used the structure to shelter and breed their cairn terriers. On February 8, 2001, Hartford verbally denied coverage to the plaintiffs. On February 9, 2001, Hartford mailed the plaintiffs a denial letter stating that coverage was not provided to other structures used in whole or part for business.

As a result of this denial, the plaintiffs filed a civil action in the Circuit Court of Talladega County, Alabama, on April 16, 2001. The plaintiffs alleged that Hartford breached the insurance contract by wrongfully denying their claim and that Hartford acted in bad faith. On May 15, 2001, Hartford removed this action to this court pursuant to 28 U.S.C. §§ 1332, 1441. On November 26, 2001, Hartford filed the motion currently before this court.

## ARGUMENTS

Hartford argues that it is entitled to summary judgment as to plaintiffs' breach of contract and bad faith claims because the plaintiffs' sheltering, breeding, and selling of cairn terriers constituted a "business" for purposes of the homeowner's policy. Hartford makes four main arguments in support of this proposition.

First, it argues that Alabama courts have generally held that the insurance definition of

---

[2] Mr. Calfee testified in his deposition that the structure was not built specifically for the terriers. According to Calfee, it was built to store two households of furniture while his house was being built.

"business" is broad. *See Lamar Adver. v. State Dep't of Transp.*, 694 So. 2d 1256 (Ala. 1996). According to Hartford, the Alabama Supreme Court has defined "business" as meaning "an undertaking or calling *for gain, profit, advantage or livelihood.*" *Vallas v. Cincinnati Ins. Co.*, 624 So. 2d 568, 571 (1993) (emphasis added). Although Alabama courts have not directly addressed the issue presented, Hartford argues that an analogous case is *Lipham v. General Motors Corp.*, 665 So. 2d 190 (Ala. 1995). According to Hartford, the court in *Lipham* held that a van used for a dog business did not come under the consumer protection provisions of Alabama's lemon law because it was not used in substantial part for personal use.

Second, Hartford argues that other jurisdictions have addressed this issue and have held that dog breeding is a "business" for purposes of a homeowner's policy. In support of this proposition, Hartford cites the court to *Wiley v. Travelers Insurance Co.*, 534 P.2d 1293 (Okla. 1975). According to Hartford, the *Wiley* court held that an insured who raised and sold St. Bernard puppies and who renovated his premises for such purposes was engaged in a business pursuit under his homeowner's policy. Hartford states that the *Wiley* court stressed the importance of the purpose of a profit and that profit motive, not actual profit, makes a pursuit a business pursuit.

Third, Hartford argues that the plaintiffs' bad faith claim should be dismissed as a matter of law because there was a legitimate or arguable reason to deny the plaintiffs' claim. Hartford explains that under Alabama law, the plaintiff must prove "a nonpayment without any reasonable ground for dispute." *Harrington v. Guar. Nat. Ins. Co.*, 628 So. 2d 323, 325 (Ala. 1993). Additionally, Hartford claims that the Alabama Supreme Court has preserved the insurer's right to legally dispute fairly debatable claims: "When a claim is 'fairly debatable', the insurer is entitled to debate it, whether the debate concerns a matter of fact or law." *Gulf Atl.*

*Life Ins. Co. v. Barnes*, 405 So. 2d 916, 924 (Ala. 1981). Hartford argues that Mr. Calfee's sheltering, breeding and selling of cairn terriers raised several legitimate and arguable reasons for why it concluded that the plaintiffs were using the structure as part of a business.

Finally, Hartford contends that plaintiffs' breach of contract claim should be dismissed as a matter of law. Hartford asserts that the Alabama Supreme Court has held that "[i]nsurance contracts, like other contracts, are construed to give effect to the intention of the parties, and when that intention is clear and unambiguous, the insurance policy must be enforced as written." *Nationwide Mut. Ins. Co. v. Hall*, 643 So. 2d 551, 558 (Ala. 1994). Hartford reasserts that Alabama courts define the term "business" very broadly. It claims that the plaintiffs' activities of breeding, sheltering, and selling cairn terriers constitutes a business. Thus, Hartford claims that there is no coverage under the policy and the plaintiffs' breach of contract claim should be dismissed as a matter of law.

In response, plaintiffs state that the policy defines business as a "trade, profession or occupation." They assert that the facts simply do not support a finding that Mr. Calfee's activities constitute a trade, profession or occupation. Plaintiffs agree with Hartford that the Alabama Supreme Court has defined "business" as "an undertaking or calling for gain, profit, advantage or livelihood." *Vallas*, 624 So. 2d at 571. Relying on this definition, plaintiffs argue that the facts dictate a finding that Mr. Calfee was not engaged in a business. Plaintiffs state that there is no evidence of any gain or profit from the terrier activity.[3] In fact, plaintiffs claim that they lost money in their efforts to raise terriers. Additionally, plaintiffs note that Mr. Calfee was

---

[3] Plaintiffs note that the Oklahoma case relied upon by Hartford recognized profit motive as an essential element of a business: "Can a hobby be a business pursuit? We believe the addition of a profit motive to an activity makes it a business pursuit . . . . In a business pursuit the profit motive, or purpose of a profit, is important." *Wiley*, 534 P.2d at 1295. Plaintiffs claim that this essential element is missing from this case because there is no evidence of any profit motive.

encouraged to continue to raise the terriers by Dr. Thweatt as a method of coping with his chronic depression. Finally, plaintiffs state that they never claimed any of the losses incurred from raising the terriers on their tax returns.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed during the pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. *Id.* The non-moving party then bears the burden of showing that there are specific facts demonstrating that there is a genuine issue of fact for trial. *Id.* at 324. "When deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). The trial court must resolve all reasonable doubts in favor of the non-moving party, but need not resolve all doubts in a similar fashion. *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).

## ANALYSIS

This court must apply the substantive law of Alabama in this diversity case, unless federal constitutional or statutory law requires a contrary result. *See Galindo v. ARI Mut. Ins. Co.*, 203 F.3d 771 (11th Cir. 2000) (citing *Salve Regina College v. Russell*, 499 U.S. 225, 226 (1991)). To determine the law of Alabama, this court must follow the decisions of the Alabama

Supreme Court, and in the absence of such decisions on an issue, must adhere to the decisions of the Alabama appellate courts unless there is some "persuasive indication that the state's highest court would decide the issue otherwise." *Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 945 (11th Cir. 1982). Furthermore, "[o]nly where no state court has decided the point in issue may a federal court make an educated guess as to how that state's supreme court would rule." *Benante v. Allstate Ins. Co.*, 477 F.2d 553, 554 (5th Cir. 1973). In making this "educated guess," federal courts can consider all resources available, "including decisions of other states, . . . and federal decisions, and the general weight and trend of authority." *Farmers Alliance Mut. Ins. Co. v. Bakke*, 619 F.2d 885, 888 (10th Cir. 1980).

      The Alabama appellate courts have not directly addressed the issue presented. This court must turn to general decisions of Alabama courts involving interpretation of insurance policies, as well as relevant decisions from other jurisdiction and common sense to make an "educated guess" as to how the Alabama Supreme Court would rule on this issue. The Alabama Supreme Court has provided the following guidance. The insurance policy is a contract that is to be "construed liberally in favor of the insured and strictly against the insurer." *Allstate Ins. Co. v. Skelton*, 675 So. 2d 377, 379 (Ala. 1996). When interpreting an insurance policy, it must be read as a whole. *Allstate Ins. Co. v. Hardnett*, 763 So. 2d 963, 965 (Ala. 2000). The policy provision in question cannot be read in isolation, but, instead, must be read in context with the other provisions. *Id.* If the court determines that the policy provision is ambiguous, then the provision "will be construed most strongly against the insurer and in favor of the insured." *Tyler v. Ins. Co. of N. Am.*, 331 So. 2d 641, 644 (Ala. 1976). However, if the provision in question is unambiguous, "then a court must enforce the policy as written and cannot defeat express provisions, including exclusions from coverage." *Auto-Owners Ins. Co. v. American Cent. Ins.*

*Co.*, 739 So. 2d 1078, 1081 (Ala. 1999). The question as to whether a term is ambiguous is a question of law and is to be decided by the trial court. *Id.*

The court must first examine the words of the policy provision when interpreting whether an insurance policy provides coverage to the named insured. In this policy, the term "Business" is defined as follows: "**Business** includes trade, profession or occupation." The Alabama Supreme Court's definition of business, while relevant, it is not absolutely controlling. The starting point is the language of the policy.

As previously mentioned, the policy defines the term business to include a trade, profession or occupation. This is the first definition listed for the word "business" in Webster's Dictionary. *See Random House Webster's College Dictionary* 185 (1991). The second definition of the word "business" is "the purchase and sale of goods in an attempt to make a profit." *Id.* Webster also defines the term "occupation" as "a person's usual or principal work, esp. in earning a living; vocation." *Id.* at 936. It defines the term "profession" to mean " a vocation require extensive education in science or the liberal arts and often specialized training." *Id.* at 1077. Finally, it defines "trade" as "any occupation pursued as a business or livelihood." *Id.* at 1413.

After examining these definitions, the terms business, trade, occupation, and profession appear to have two distinguishing characteristics. First, they all appear to address an activity pursued to earn a living. Second, they all appear to address activities in which one attempts to make a profit. With these characteristics in mind, it is certainly not clear that Mr. Calfee's breeding and selling of cairn terriers was a "business" as that term is defined in the policy. At the very least, the term is ambiguous and must be construed against the insurer and in favor of the insured. *See Tyler v. Ins. Co. of N. Am.*, 331 So. 2d 641, 644 (Ala. 1976).

Mr. Calfee's breeding of cairn terriers was arguably not a "business" because he apparently was not attempting to earn a living through this activity. Mr. Calfee earns a living through the receipt of long-term disability payments from the Xerox Corporation. Mr. Calfee testified in his deposition that the did not keep up with "financially what is done as far as sales." He did not take any tax deductions for business expenses relating to the breeding and registering of the terriers. According to Mr. Calfee, the structure was built to store his furniture while his house was constructed on the lot. Mr. Calfee testified that the terriers lived in houses outside the structure. He states that he built a four foot by six foot pen inside the structure so the dogs could be sheltered from the weather during the winter.

The second reason why Mr. Calfee's activities arguably do not constitute a "business" is because he was not attempting to make a profit. The facts of this case demonstrate that Mr. Calfee was not operating a dog kennel out of this structure. He only had four terriers at the time of the fire. Additionally, Mr. Calfee did not make a profit from his activities. He did not earn enough money from the sale of the terriers to cover his veterinarian bills and dog food expenses. Finally, it is undisputed that Mr. Calfee continued to breed the terriers after receiving encouragement from his psychiatrist, Dr. Thweatt. This evidence disputes that his motivation for breeding and selling terriers was financial gain or profit. The conduct discussed in *Vallas* certainly evidenced activity motivated by financial gain and profit. 624 So. 2d at 571. The parties formed a limited partnership which was created to buy and sell investment real property for capital gain. *Id.*

The court also finds the *Lipham* case distinguishable and unpersuasive. First, the court was not even attempting to define the word "business" in *Lipham*. Second, there was direct testimony from the parties themselves that their van was purchased for use primarily in a

9

commercial enterprise, a dog breeding business. 665 So. 2d at 193. Unlike the parties in *Lipham*, Mr. Calfee has testified that the structure was built specifically to store his furniture while his house was being built.

Finally, the court is unpersuaded by the analysis in *Wiley*. The majority in *Wiley* found that the "addition of a profit motive to an activity makes it a business pursuit." 534 P.2d at 1295. There is no evidence that Mr. Calfee was persuaded or motivated to breed terriers for profit. Mr. Calfee was earning a living through the receipt of long-term disability payments from Xerox at the time he began breeding the terriers. Further, it is undisputed that Mr. Calfee was encouraged by Dr. Thweatt to continue this activity as a method of coping with his chronic depression. Finally, this court specifically finds the dissenting opinion in *Wiley* to be highly persuasive. The dissent correctly points out that the majority reached its decision without considering the definitions contained in the policy itself.[4] The dissent continued its analysis by analyzing the definitions of the terms trade, profession, and occupation. After this analysis, the dissent found that the terms emphasize particular activities on which a person concentrates in earning a living. 534 P.2d at 1297. Applying this interpretation, the dissenters could not reach the conclusion that the homeowner was raising dogs in a "business pursuit."

---

[4] The policy's definition of "business" was: "trade, profession, or occupation . . . ." 534 P.2d at 1296.

## CONCLUSIONS OF THE COURT

The court concludes that Hartford's motion is due to be **DENIED**.[5]

This 22nd day of January 2002.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

---

[5] The bad faith claim is problematical. At this stage, however, the court cannot determine, as a matter of law, how much investigation Hartford took before denying the claim or what it considered in totality. A full investigation would have probably led to the conclusion that there was no real "business" involved.

11